[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The principal issue in this case is whether a landlord who receives benefits under Connecticut's Affordable Housing Program; General Statutes 8-119bb; can terminate a tenancy without alleging and proving good cause for the eviction. For the reasons set for the below, this court concludes that the Due Process Clauses of the United States and Connecticut Constitutions CT Page 8561-a prohibit the eviction of a tenant from a unit receiving assistance from the Affordable Housing Program unless good cause is alleged and proved.
The following facts are found. The parties entered into an oral month to month lease for the rental of plaintiff's apartment. In December, 1992, the plaintiff issued a notice to quit alleging the rental agreement had terminated by lapse of time. This summary process action followed. The parties agree that the defendant has been found disabled by the Social Security Administration for the purpose of her receiving disability benefits. Defendant is diagnosed as a paranoid schizophrenic.
The parties further stipulate that the defendant resides in a building operated under Connecticut's Affordable Housing Program, as set forth in General Statutes 8-119bb et seq. The Affordable Housing Program is administered by the Commissioner of Housing. If a housing authority, municipal developer or non-profit corporation is determined eligible, the Commissioner can provide financial assistance to it in the form of grants or low interest loans. 8-119dd. The assistance provided to the developer CT Page 8561-b is derived from the sale of bonds as approved by the State Bond Commission. General Statutes 3-20 et seq. That assistance is to be utilized by the developer for "site acquisition and preparation, construction, fees and the cost of administration." Regulations of the Department of Housing, 8-119jj-2(b). As a condition of receiving such assistance, the developer can lease apartments only to those individuals or families whose adjusted gross income does not exceed fifty percent of the area's median income. Id.
Defendant's special defenses allege that plaintiff is precluded from evicting her for lapse of time both because she is handicapped within the meaning of General Statutes 47a-23c and because the federal and state due process clauses prohibit her eviction for lapse of time.
Defendant's first argument is that General Statutes 47a-23c
prohibits eviction of certain tenants except for good cause. Specifically, 47a-23c, entitled "Prohibition on eviction of certain tenants except for good cause," prohibits a landlord from evicting elderly and blind or physically disabled persons except CT Page 8561-c for certain specified reasons such as nonpayment of rent or violation of the lease. Lapse of time is not one of the authorized reasons.
Sec. 47a-23c(a) provides in relevant part that, "[T]his section applies to any tenant who resides in a building or complex consisting of five or more separate dwelling units and who is . . . physically disabled, as defined in section 1-1f, but only if such disability can be expected to result in death or to last for a continuous period of at least twelve months." Section 47a-23c(b)(1) further provides that:
 No landlord may bring an action of summary process or other action to dispossess a tenant described in subsection (a) of this section except for one or more of the following reasons: (A) Non-payment of rent; (B) refusal to agree to a fair and equitable rent increase, as defined in subsection (c) of this section; (C) material noncompliance with section 47a-11 or subsection (b) of section 21-82, which materially affects the health and safety of the other tenants or which materially affects the physical condition of the premises; (D) voiding of the rental agreement pursuant to section 47a-31, or material noncompliance CT Page 8561-d with the rental agreement; (E) material noncompliance with the rules and regulations of the landlord adopted in accordance with section 47a-9 or 2170; (F) permanent removal by the landlord of the dwelling unit of such tenant from the housing market or (G) bona fide intention by the landlord to use such dwelling unit as his principal residence.
Defendant claims that she is physically disabled within the meaning General Statutes 1-1f(b) which states that an "individual is physically disabled if he has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes from illness, including, but not limited to, epilepsy, deafness, or hearing impairment or reliance on a wheelchair or other remedial device."
Defendant is diagnosed as a paranoid schizophrenic and has been found disabled by the Social Security Administration for purposes of disability income. Acknowledging that paranoid schizophrenia is a mental, not a physical, disability, defendant nevertheless argues that her mental illness is included within the CT Page 8561-e meaning of physical disability. Defendant argues alternatively that she is disabled because the medication she takes causes her some physical side effects. Neither argument is persuasive.
In construing a statute the court is required to give effect to the intent of the legislature. In the absence of any ambiguity the legislature's intent is to be found in what it did say, not what it meant to say. Furstein v. Hill, 218 Conn. 610 (1991). "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language;" General Statutes Sec. 1-1(a); State v. Cook, 183 Conn. 520 (1981).
The term physical disability, as used in 1-1f, does not include mental disability. To hold otherwise would be to distort the plain meaning of the phrase physical disability and to stretch its meaning beyond its commonly understood definition. The American Heritage Dictionary defines physical as, "Of or pertaining to the body, as distinguished from the mind or spirit" Further, in defining a physically disabled person as one who has a "chronic physical handicap" the legislature made clear that it was not including mental disability within its definition. Defendant's reference to CT Page 8561-f comments made in the legislative debate does not convince this court otherwise. At the most those comments indicate that it was the legislative intent to use the phrase physically disabled in its most expansive meaning with respect to disabilities which are physical in nature, but not to enlarge its meaning to include mental disability.
The defendant's next claim is that there is sufficient governmental involvement in the funding and regulation of plaintiff's complex to invoke the protection of the state and federal due process clauses. In support of her argument defendant relies on state and federal cases holding that public housing authorities and developers who receive direct assistance from the state are prohibited from evicting tenants except for good cause, that is, for reasons other than lapse of time, such as non-payment of rent or violation of the lease agreement.
Defendant cites Joy v. Daniels, 479 F.2d 1236 (4th Cir. 1973) and Lopez v. Henry Phipps Plaza South, 498 F.2d 937 (2nd Cir. 1974) in support of her claim that there is sufficient state involvement in the funding and regulation of plaintiff's complex CT Page 8561-g to trigger due process protection. In Joy v. Daniels, supra, the landlord received rent and mortgage subsidies from programs administered by the Federal Housing Authority. In return for such assistance, the landlord was required to conform to a regulatory agreement with the Federal Housing Authority, governing, inter alia, the construction, occupancy and daily operation of the program." Based on these factors, and its use of state court eviction procedures, the Court held that there was sufficient "state action" to invoke the protection of the Fourteenth Amendment Due Process Clause.
Likewise in Lopez v. Henry Phipps Plaza South, supra, the non-profit redevelopment company which developed a project for low and middle income families was subject to extensive supervision by the local Housing Authority. The land on which the project was built was acquired by eminent domain and received a twenty five year tax exemption. In addition, the developer received rental subsidies from federal programs and was subject to a regulatory agreement setting forth a rental schedule and tenant eviction procedures.
In its brief plaintiff "concedes that as a general principle, given CT Page 8561-h the nature of the state subsidy under the Connecticut Affirmative Housing Program, there is sufficient state action and involvement to require a guarantee of procedural fairness." This court agrees that there is sufficient state involvement to enlist the protection of our state due process clause; Connecticut Constitution, ArticleFirst, Section Eight; as well as its federal counterpart, United States Constitution, Amendment Fourteen, and that the failure of the plaintiff to allege and prove a "good cause" basis for defendant's eviction is a violation of her due process rights.
The record in this case discloses that the plaintiff receives direct financial benefits under the State Affordable Housing Program;8-119bb; either in the form of an outright grant or low interest loans. Pursuant to regulations promulgated by the Department of Housing, the plaintiff is subject to regulatory requirements governing tenant eligibility; the amount of rent that can be charged; and removal of over income tenants. Regulations of Connecticut State Agencies, 8-119jj-3 et seq.
Under these circumstances there is no meaningful difference between the instant case and the situation in Joy v. Daniels, supra, CT Page 8561-i and Lopez v. Henry Phipps Plaza South, supra. The plaintiff receives substantial governmental assistance, directly and indirectly and its operations are subject to a detailed regulatory scheme. Accordingly, its eviction procedures are subject to state and federal due process limitations.
The remaining question is whether the defendant in this case has a property right in her continued occupancy of the apartment sufficient to require due process protection. Again, Joy v. Daniels, supra, and Lopez v. Henry Phipps Plaza South, supra, are instructive. In Joy v. Daniels, the court concluded that the tenant possessed a "property right of entitlement to continued occupancy until there exists a cause to evict other than the mere expiration of the lease." 479 F.2d 1241. It reached that conclusion on the basis of the following factors. First, the federal legislation under review (providing mortgage insurance benefits) contained an explicit Congressional policy of providing adequate, safe and affordable housing for every American. Second, Congress issued specific directives as to how the program was to be administered, suggesting "the Congress was contemplating more occupancy entitlement than limited leasehold terms." Id., 1241. Finally, the CT Page 8561-j court also noted the "expectation of some degree of permanency" with respect to public housing, rooted in the "customs" of public housing. Id. Based on these factors, the court concluded that the tenant possessed a "property right or entitlement to continue occupancy until there exists a cause to evict other than the mere expiration of the lease." Id, 1241. Accordingly, the tenant could not be evicted unless the landlord pled and proved a good cause basis for eviction.
This case presents facts strikingly similar to that in Joy v. Daniels. First, 8-119bb contains an explicit declaration of legislative policy with respect to affordable housing. "[The construction of new housing or rehabilitation of existing housing accommodations to provide safe and sanitary dwelling facilities for low income persons are public uses and purposes for which money may be spent, and the necessity in the public interest for the provisions hereinafter enacted is declared as a matter of legislative determination."
Second, as in Joy v. Daniels supra, the statute in this case, together with its implementing regulations, contains explicit procedures CT Page 8561-k governing the selection of tenants, eligibility standards, maximum and minimum rental amounts and removal of over income tenants. Regulations of Connecticut State Agencies Sec.8-119jj-1 et seq.
In short, this court agrees with the Second circuit's conclusion in Lopez v. Henry Phipps Plaza South, supra, 943, that "[t]he federal government, the states and the cities which have extended aid to low and middle income housing hardly expected that a tenant could be evicted at the end of his term simply at the landlord's whim when substitute housing could be obtained, if at all only with delay, disruption in living habits and expense."
Accordingly, defendant's expectation of a continuing tenancy constitutes a property interest protected by theFourteenth Amendment to the United States Constitution and Article First, Section 8 of the Connecticut Constitution. The process to which the tenant is entitled is the allegation and proof that her tenancy should be terminated for good cause. Joy v. Daniels, supra; Lopez v. Henry Phipps Plaza South, supra.
The defendant's first special defense is sustained. Judgment CT Page 8561-l for the defendant.